658

UNITED STATES, for Use and Benefit of BENNETT, v. CARILLI CONST. CO. et al. (RAISLER CORPORATION, Third Party Defendant).

Civil Action No. 1992.

District Court, D. Massachusetts.

Oct. 27, 1943.

As Amended Nov. 3, 1943.

Eugene M. Clennon and Ralph F. Roach, both of Boston, Mass., for Warren H. Bennett.

Frank Mulready, of Boston, Mass., for Carilli Const. Co.

Frank Mulready, of Boston, Mass., for Peerless Casualty, etc.

A. K. Cohen, Max E. Bernkopf, and A. H. Grauman, all of Boston, Mass., for Raisler Corporation.

SWEENEY, District Judge.

In this action, brought under the Miller Act, 40 U.S.C.A. § 270a et seq., the plaintiff William H. Bennett (who will hereinafter be referred to as Bennett) seeks to recover from the Carilli Construction Company (which will hereinafter be referred to as Carilli) the costs of performing certain electrical work claimed by Bennett to have been an extra outside of his original contract. Carilli admits that the work done was done at its request, but insists that it was covered by its subcontract with Bennett. There is no question as to the fair value of the work done. The sole point to decide with regard to this claim is whether the work was called for under Bennett's contract with Carilli or was outside the contract, and, hence, an extra.

After the original action had been brought, Carilli joined the Raisler Corporation (which will hereinafter be referred to as Raisler) as a third party defendant, alleging, in substance, that Raisler was charged by contract with the responsibility of doing the work for which payment is demanded by Bennett, and Carilli demanded judgment against Raisler for such sum as might be adjudged in favor of Bennett against Carilli. Raisler in its answer denied that the work done by Bennett was called for in its (Raisler's) contract, and, in turn, filed a counterclaim against Carilli for a balance due under Raisler's contract with Carilli.

Whether it appears in the pleadings or not, counsel were all in agreement at the trial that Carilli has paid no one for the work in question, and holds funds ready to pay which ever person the court shall decide was chargeable with the work. Carilli takes the position that as a stakeholder it will pay the sum of $2,475 to the Raisler Corporation if the work done by Bennett was chargeable to Bennett under his contract, or, if the court decides that Raisler should have done the work, then the sum of $2,475 is to be paid to Bennett who actually did the work. There is a third alternative; that is, if the court finds that neither Bennett nor Raisler were chargeable with the work, then Carilli owes Bennett $2,475 for the work that he actually performed, and owes Raisler at least $2,475 of the $3,120.90 claimed by Raisler, in its counterclaim. The balance of Raisler's counterclaim to make up $3,120.90 will be taken up separately as the last item to be covered in this opinion.

### Findings of Fact

The contracts and specifications are too voluminous to quote herein, but the gist of the action can be stated in the following facts which are my findings of fact:

In the summer of 1941 Carilli entered into a contract with the War Department to construct and complete four motor repair shops, type SP–14, and three motor repair shops, type SP–2 and nine other smaller buildings. It is with the SP–14 and SP–2 types that we are concerned. Shortly thereafter Carilli entered into a subcontract with Bennett wherein Bennett agreed to "furnish all labor and materials and equipment and perform all work required for the construction and completion of the electrical wiring and work" for the structures referred to. The drawings and specifications, prepared by the United States War Department, were incorporated into this subcontract. At or about the same time Carilli entered into a subcontract with Raisler wherein Raisler agreed to "furnish all labor, materials and equipment and perform all work required for the construction and completion of the heating and ventilating" for the structures under consideration.

The work for which Bennett now sues, and for which Carilli has joined Raisler as the third party defendant, involves the electrical wiring incidental to the operation of the heater and ventilator units. It is not the ordinary type of wiring which would introduce electrical energy into a building through an appropriate installation, but is electrical wiring designed particularly to effect the operation of the heating and ventilating units. It might be termed all of that electrical work between the boilers themselves and the panels from which they operate.

As between Bennett and Carilli, there does not now seem to be any agreement in the construction of their subcontract. Carilli, on the one hand, asserts that Bennett was bound under his contract to do all the electrical work including the heating and ventilating units, and Bennett, on the other hand, urges that his work was limited to the electrical work incidental to the building itself, and that it did not relate to the installation of the heating electrical work.

Regardless of their present construction of the contract, it is abundantly clear from the evidence that, at the time the contract was entered into between Carilli and Bennett, both parties agreed that the contract did not call for Bennett to install the electrical work in connection with the heating and ventilating units. I therefore find as a fact that a collateral agreement existed between the contracting parties that the electrical work incidental to tying up the heating and ventilating equipment was not included in their subcontract. As a matter of fact, Carilli testified in open court that he, as president and general manager of his corporation, expected Raisler to do the work rather than Bennett, and his conduct at the time that the matter was taken up officially with Bennett and Raisler while the job was progressing proves this point. While this contemporaneous construction of the Bennett-Carilli subcontract by each of the parties must control as between them, McClintic-Marshall

Co. v. Freedman, 274 Mass. 558, 175 N.E. 55, it is interesting, as bearing on the Raisler contract, that the specifications, in paragraph E–1 entitled "General", provide that the: "Contractor shall furnish all labor and materials necessary for a complete wiring system in each building, as indicated on the drawings and as covered herein."

As to the claim by Carilli that Raisler was bound to do the wiring in controversy, Raisler points to the above specifications as not only proof that he, Raisler, was not bound to do the work, but that, by the terms of the Bennett-Carilli subcontract, Bennett was bound to do it. I have disposed of the question whether Bennett was bound to do the work under his contract, and have found that he was not.

### The Raisler Subcontract

■ With regard to the Carilli claim that Raisler was bound by his subcontract to do the electrical work in connection with the heating and ventilating system, it is worthy of notice that at the time that Carilli submitted the contract to Raisler it contained in typewriting, after Section 2 of the contract, the following words: "This contract does not include any excavation or backfilling and concrete work. Electric wiring and painting, if same is not called for under the heating and ventilating specification of the project, will be done by others, otherwise by the subcontractor."

Immediately upon the receipt of this contract, Raisler wrote to Carilli to the general effect that he wanted this paragraph eliminated because it was his understanding "that in no event do we include any excavation, backfill, concrete work, electric wiring or painting". Upon receipt of this letter of July 11, 1941, Carilli agreed that the contract might be changed so as to exclude all reference to excavation, backfilling, and concrete work. In his letter Carilli stated, however, "that the rest of the paragraph under Section 2, especially the 'electric wiring and painting, if same is not called for under the heating and ventilating specification of the project,' shall remain as is, for the reason that we find items of that nature being part of the heating and ventilating specification under your contract."

From this interchange of correspondence it is clear that Raisler intended to do no electrical wiring whatsoever, whereas Carilli felt that the subcontract called for "items of that nature" being covered by the contract. In any event the sense of this clause was that the electrical wiring was to be done by Raisler if called for under specifications of his contract, otherwise it was to be done by others. Reference to the heating and ventilating specifications of Raisler's heating contract does not show the elaborate electrical wiring for which claim is here made by Carilli against Raisler. The specifications do show certain wiring that is incidental to the heating unit, and, in fact, is a part of the unit as sold. This includes such things as the exhaust fan motors, unit heater motors, and thermostats. It was the obligation of Raisler to furnish and install this equipment. Such items are a part of the heater unit. But the specifications and plans do not show the wiring that is necessary to connect them either between themselves or to any circuit outlet or panel. I therefore find that it was not a part of Raisler's contract to do the wiring for which he has been charged by Carilli.

As a matter of fact, Raisler was not in the electrical business, and, so far as the evidence showed, had no electricians in his employ. It cannot be doubted that in order to comply with the Massachusetts requirements the electrical work would have to be done by a person licensed to do that type of work. Such being the case, it is hardly conceivable that Raisler's liability to do all this work would be encompassed within the slim utterance referred to as the typewritten portion inserted after Section 2 of the subcontract.

I therefore find that the cost of installing the electrical work in issue has been improperly charged to Raisler in the amount of $2,435, and deducted from the amount due him. While it may seem unusual that the principal contractor is liable to both of these men, it results only from the fact that neither one was charged with the responsibility of doing the electrical work. Insofar as Raisler is concerned, it never was part of his contract. Insofar as Bennett is concerned, I think that the Bennett contract might have encompassed this work as well as all other electrical work, except for the collateral agreement between the parties that it was excluded from the contract. Carilli, in making this contract, may have gone off on the false theory that the heating contract covered such work. But, it clearly does not. Since Bennett did this work at the request of Carilli, and, since it was outside of his contract, he is entitled

to recover from Carilli the fair costs of his work which I find to be $2,475.

## Counterclaim Items

[3] Carilli has deducted from the amount due Raisler certain items that are now before me for decision whether they are proper deductions against Raisler. The first item is with relation to the construction of four ash pits for which $120 was deducted by Carilli. Clearly this was not included in the Raisler contract. That contract, together with the letter written by Carilli under date of July 15, 1941, amplifying it, stated specifically that Raisler was not to do any excavation, backfilling or concrete work. The deduction of $120 for the construction of four ash pits was therefore an improper deduction.

█ With relation to the labor on the breeching of the SP–14 and SP–2 a deduction of $476.33 was made by reason of this work. The Raisler contract provides that it would furnish "all labor, materials and equipment and perform all work required for the construction and completion of the heating and ventilating" for the structures named. A fair reading of this contract would indicate that Raisler was charged with not only the rough breeching of the walls for the passage of the smoke pipe, but for the workmanlike finish that was called for in all of the specifications. While it is true that the roofer's contract called for lining the breech, this is limited to the wall edges of the hole through which the smoke pipe was to pass. The specifications, fairly read, indicate clearly that the work which was chargeable to Raisler was a completed workmanlike job in the manner in which it was eventually finished by Carilli and one Belanger. This work being covered by the contract and specifications, and not having been done by Raisler, was a proper deduction from his account.

Raisler has waived three items totalling $89.50, which were deducted from his account, and this waiver operates to approve the deductions.

## Conclusions of Law

From the foregoing I find and rule that the electrical work done by Bennett at Carilli's request was not included in the original Carilli-Bennett contract.

I also find and rule that under the Carilli-Raisler contract the Raisler Corporation was not charged with the duty of doing that electrical work.

I find and rule that the defendant Carilli has improperly retained from moneys due the Raisler Corporation $2,435 as a deduction for electrical work, and $120 for ash pit construction.

The plaintiff Bennett is to have judgment against the defendants Carilli Construction Company, Peerless Casualty Company and United Pacific Insurance Company in the sum of $2,475 with interest and costs.

The third party defendant, Raisler Corporation, is to have judgment against the Carilli Construction Company, Peerless Casualty Company and United Pacific Insurance Company in the sum of $2,555 with interest and costs.